HOEFT, Appellant,

v.

HOEFT, Appellee.

[Cite as *Hoeft v. Hoeft* (1991), 74 Ohio App.3d 809.]

Court of Appeals of Ohio,
Lucas County.

No. L–90–149.

Decided July 19, 1991.

*Paul D. Giha,* for appellant.
*Henry B. Herschel,* for appellee.

---

SHERCK, Judge.

This is an appeal from the Lucas County Court of Common Pleas, Domestic Relations Division, where appellant, Nancy Hoeft, was granted a divorce from appellee, Allen E. Hoeft. There were three contested issues in the divorce proceedings: (1) whether the money to be paid to appellee for a covenant not to compete executed by appellee in connection with the sale of his dental practice is a marital asset, (2) the calculation of child support, and (3) the issue of alimony. All other issues in the divorce were agreed to and settled by the parties.

Following a trial on the three contested issues the trial court found that: (1) the money to be realized by appellee from the covenant not to compete is in the character of future earnings of appellee and not marital property, (2) appellee is to pay $529.54 per month in child support based on the Child Support Guidelines, and (3) appellant was not entitled to alimony based on the eleven factors set forth in former R.C. 3105.18(B). Appellant has appealed offering the following assignments of error:

"A. The Trial Court committed error when it decided that the funds derived by Dr. Hoeft from the document styled 'Non Competition Agreement' were not marital assets.

"B. The Trial Court committed error both in calculating the amount of the child support to be paid by Dr. Hoeft and in determining the commencement date of said payments.

"C. The Trial Court committed error by not requiring Dr. Hoeft to pay alimony."

We find merit in appellant's first and second assignments of error but not in her third assignment of error.

The parties were married in 1967 while appellee was in dental school. Appellant, who was also a college student at the time, discontinued her education after the marriage. In 1972, appellee purchased a dental practice in Toledo, Ohio. The couple had two children, one born in 1971 and the other in 1978. Appellee built a successful dental practice during the marriage. In the five years prior to the sale of his practice, appellee averaged an income of approximately $120,000 per year from his work as a dentist. Appellee testified that in the six months prior to the sale of his dental practice he earned $57,000 from practicing dentistry.

In April 1988, appellee began making arrangements to sell his dental practice. His plans were to relocate his family and begin a new dental practice in northern Michigan. In August 1988, appellant filed her complaint for divorce. The closing of the sale of appellee's practice took place in July 1989. The divorce was final on May 2, 1990.

In the early years of the marriage, during the time appellee was in dental school, appellant worked outside the home as a secretary. Subsequently, appellant attended to caring for her family and home while appellee practiced dentistry. The couple amassed substantial assets during the marriage, including cash assets of approximately $1,047,000 and noncash assets of considerable value. These marital assets were divided by agreement between the parties. The present controversy involves an agreement to pay appellee $225,000 for a noncompetition agreement signed by appellee at the time of the

closing of the sale of his dental practice. Appellee contends that the $225,000 is not a marital asset; appellant contends it is. The trial court agreed with appellee.

## I

Appellant's first assignment of error questions the trial court's characterization of the $225,000 as a nonmarital asset. As stated above, the trial court held that this money was not marital property, but "future earnings." Appellant contends that the $225,000 was in actuality payment for the dental practice and not for the covenant not to compete. As such, appellant maintains it should be designated marital property.

The terms and conditions of the sale of appellee's dental practice are set forth in a purchase contract signed by appellee and the buyer on April 1, 1988. The closing of the sale took place on July 1, 1989. The purchase contract states that "at closing" appellee will sell his dental practice to the buyer for $60,000. The purchase price for the dental practice included " * * * all the assets, properties and business of the Dental Practice located at 4611 North Summit Street, Toledo, Ohio, whether tangible, intangible, personal or mixed, the patient records, goodwill, x-rays, study models and all business and accounting records of the practice, wherever located, (except personal items listed in Exhibit 'A') including without limitation the following:

"A. All patient records, x-rays, addresses, and telephone numbers, from the inception of Seller's practice to the date of closing;

"B. All leasehold improvements and lease rights located on premises specified at the above address;

"C. All dental equipment, trade fixtures, furnitures, office equipment, instruments, furnishings, supplies, consumables and everything else located at the specified address unless specifically excluded by Exhibit 'A.' Exhibit 'D' attached hereto contains a list of the major items being transferred under this subsection;

"D. Any rights to the telephone number; and

"E. Goodwill."

In addition to the sale of the dental practice for $60,000, the purchase contract also stated:

"In connection with this sale to Buyer and as a further inducement to Buyer to enter into this Agreement, Hoeft shall, at closing, enter into an Agreement Not to Compete (Exhibit E hereto) with respect to competing with Buyer. Such agreement shall be secured by certain of Buyer's assets; [*sic*] an insurance policy, and the guarantee of Buyer's wife."

The noncompetition agreement states that appellee will not engage in the practice of dentistry within a twenty-mile radius of the dental practice sold for a period not to exceed five years. It further states that the buyer will pay appellee $225,000, with interest at ten percent per annum, in sixty equal monthly installments of $4,780.59.

The issue in the first assignment of error is whether $225,000 was a reasonable price to pay for the covenant not to compete, or if some or all of the $225,000 was actually for the sale of the dental practice, but designated as the price of the covenant not to compete for tax and/or divorce purposes. Money received for the sale of the dental practice is considered marital property, while money received for a covenant not to compete is considered a nonmarital asset. See *Blodgett v. Blodgett* (Oct. 19, 1988), Summit App. No. 13547, unreported, 1988 WL 110926, reversed on other grounds (1990), 49 Ohio St.3d 243, 551 N.E.2d 1249.

At the trial, there was some testimony concerning the value of the dental practice. Appellant's expert witness, a certified public accountant, testified that in his opinion:

"Basically in the agreement of sale and in the covenant not to compete, I feel that the value placed on it by the seller and the buyer, namely 60,000 in one case and 225,000 in the other case, would equate to a fair-market value [of the dental practice] as they are unrelated third parties."

Thus, the certified public accountant's opinion was that the entire price of the covenant not to compete was in actuality part of the purchase price for the dental practice.

Appellee's expert witness, Dr. James B. Platek, a dentist who sells, appraises and brokers dental practices in Ohio and Michigan, testified that in his opinion the $225,000 paid for the covenant not to compete was not unusual with the exception of the ten percent interest provision. In addition, Platek testified that the value of dental practices in the Toledo area ranges from $100,000 to $250,000, although some are much cheaper. Platek further testified that the amount paid by the buyer for appellee's dental practice, $60,000, was "very reasonable." Platek stated that in his opinion the reason the buyer paid $225,000 plus interest for the covenant not to compete was:

"Because of the price he paid for the practice was low, the practice is a very good practice. So in order to pay for the goodwill which he already had established a price on, yet it was low and yet this part of it is very high, the only reason I can thing [*sic*] this seller and buyer—buyer agreed to it is because Allen was going to move from the area and he would be guaranteed

that all the patients would stay as a nucleus with he and his wife at that location."

Appellee testified that he intended, upon selling his practice, to relocate his practice in northern Michigan. This new location would be well outside the twenty-mile radius specified in the covenant not to compete. Appellee testified that it was his estimate that supplies for the new practice would cost approximately $30,000 while equipment would cost an additional $70,000.

Appellant argues that it defies logic, based on the testimony in this case, to believe the $225,000 represented payment for a noncompetition agreement where appellee had no intention of staying in the Toledo, Ohio area; where his practice, and all of its equipment, which generated a $120,000 annual income, was sold for only $60,000; and, where the price of the noncompetition agreement included a provision for ten percent interest. Appellee argues that the transaction was merely a "smart business move" and that the covenant not to compete is a personal service contract under which he is being paid for not practicing dentistry in the Toledo, Ohio area in the future.

Notwithstanding appellee's contentions, it is evident from the record that the trial court's decision that the entire $225,000 was in the nature of future earnings and not a marital asset was clearly an unreasonable one. As such, it constitutes an abuse of discretion under the dictates of *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140, which defines that term as " 'more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " *Id.* at 219, 5 OBR at 482, 450 N.E.2d at 1142. All of the trial testimony on the subject of the value of the dental practice indicates that appellee's dental practice is worth more than $60,000. Appellee's own expert testified that " * * * the price he paid for the practice was low, the practice is a very good practice. So in order to pay for the goodwill which he already had established a price on, yet it was low and yet this part of it is very high * * *." Appellee himself testified that it would cost him approximately $100,000 just to buy supplies and equipment for a new practice.

We agree with appellant that it "defies logic" that $60,000 was the fair market value of appellee's dental practice consisting of all dental supplies and equipment plus the patient records, x-rays, address lists, telephone numbers of the patients, and goodwill. This is especially true where the dental practice generates a net income of $120,000 a year. Under these circumstances a valuation of the practice at $60,000 is on its face unreasonable. We also agree with appellant that it "defies logic" that a buyer would pay $225,000 for a noncompetition agreement to a seller who is planning to move far from the area. It is *per se* unreasonable and unrealistic to value a covenant not to compete at $225,000 for a $60,000 business.

It is this court's view that some portion of the $225,000 was in actuality part of the purchase price of the dental practice and therefore a marital asset. Because there is no finding in the record of this case as to the actual fair market value of the dental practice, this court cannot determine what portion of the $225,000 is a marital asset. We therefore remand the case to the trial court for a determination of the fair market value of the dental practice. The trial court should then determine what part of the $225,000 is attributable to the purchase price of the practice and treat that portion as a marital asset to be divided equitably between the parties. The remainder of the $225,000, if any, shall be treated as the cost of the covenant not to compete and awarded solely to appellee as a nonmarital asset of future earnings. See *Blodgett v. Blodgett, supra.*

Accordingly, appellant's first assignment of error is found well taken.

## II

Appellant's second assignment of error alleges that the trial court erred in calculating the amount of child support and the date on which the child support was to begin. This court will not disturb a trial court's determination of the amount of child support absent an abuse of discretion. *Merkel v. Merkel* (1988), 51 Ohio App.3d 110, 554 N.E.2d 1346.

The trial court set the amount of child support at $529.54 per month based on the child support guidelines in effect at the time and by using the income figures of $24,000 per year for appellant and $57,367.08 per year for appellee. Appellee's income of $57,367.08 reflects the amount of money he is receiving in payments on the covenant not to compete. Appellant's income of $24,000 reflects the amount of interest she receives on the cash assets she was awarded in the divorce proceedings.

Appellant argues that if her interest income is used in calculating child support, so should appellee's interest income be used, as he received cash assets in the division of marital property also. We agree and find that the trial court abused its discretion in this regard.

Appellant also argues that the $57,000 appellee earned in the practice of dentistry for the first half of 1989 should be included in his income for purposes of determining child support. At the time the trial court determined the level of child support, appellee was no longer practicing dentistry but was in the process of relocating his dental practice to Michigan. Thus, the trial court was correct in not including appellee's former income of $57,000 in its determination of child support.

Further, since we have remanded the issue of property division to the trial court, it will be necessary for the trial court to recalculate child support based on the income of the parties as it will be after the new property division order.

In calculating child support, the trial court shall include as income for appellee the portion of the payments he is to receive from the $225,000 and his probable income from his investments. The trial court shall include as income for appellant the payments she is to receive from the $225,000 and her probable investment income.

■ Appellant also alleges that the trial court should have made child support payable from July 21, 1989, the date she states a temporary child support order was terminated and appellant was awarded custody of the minor child. The trial court awarded child support effective April 9, 1990, the date of its decision setting the amount of child support. The record in this case indicates that on August 12, 1988 appellant filed a motion for temporary custody and child support. On December 7, 1988, all pending motions were dismissed by agreement of counsel for the parties and the temporary child support motion was never ruled on. On June 19, 1989, appellant again filed a motion to establish temporary child support. Nothing in the record indicates that this motion was ever ruled on. The only document in the record dated July 21, 1989, the date appellant states that temporary child support was terminated, is one titled "Stipulations" in which the parties stipulate to certain assets and their values. On August 22, 1989, a "Final Judgment Entry of Divorce" was entered by the trial court. This judgment entry was an agreement between the parties settling all aspects of the divorce save the three issues which are presently before this court. The judgment entry awarded an absolute decree of divorce to appellant, gave appellant custody of the minor child, and gave appellee visitation rights.

We find that if appellant had wished to receive temporary child support from the time the consent judgment entry was filed on August 22, 1989 until the time the court determined the issue of child support, she should have so provided in the consent judgment entry. Since no such provision was included, and since appellant did not pursue her motion for temporary child support which she filed on June 19, 1989, the trial court was free to order child support to begin at the time it was finally determined, April 9, 1990.

We therefore find appellant's second assignment of error well taken in part and not well taken in part as discussed above. We remand the issue of the amount of child support to the trial court to be recalculated in accordance with this decision.

## III

■ Appellant's third and final assignment of error is that the trial court erred in not awarding her sustenance alimony. Appellant argues that she

should have been awarded sustenance alimony because of the twenty-two year duration of the marriage, the high marital standard of living, and appellant's lack of marketable skills. A trial court's decision concerning alimony will not be disturbed absent an abuse of discretion. *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 20 O.O.3d 318, 421 N.E.2d 1293. An abuse of discretion has been defined as " 'more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary or unconscionable.' " *Blakemore v. Blakemore, supra,* 5 Ohio St.3d at 219, 5 OBR at 482, 450 N.E.2d at 1142. Given the fact that appellant received over $600,000 in cash and pension assets in the agreed-upon property division in this case, we cannot say that the trial court abused its discretion in not also awarding her sustenance alimony. We therefore find appellant's third assignment of error not well taken.

On consideration whereof, the court finds substantial justice has not been done the party complaining, and judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is reversed in part as stated above. This cause is remanded to said court for further proceedings not inconsistent with this decision. It is ordered that appellee and appellant equally share the court costs of this appeal.

> *Judgment affirmed in part,*
> *reversed in part,*
> *and cause remanded.*

GLASSER and MELVIN L. RESNICK, JJ., concur.